UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| JOSHUA DOBSON, | ) | |
|---|---|---|
| Petitioner, | ) ) ) | |
| v. | ) ) | Nos.: 1:12-CR-42-CLC-SKL-1 1:16-CV-355-CLC |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) | |

**MEMORANDUM**

Before the Court is Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. On July 6, 2017, the Court held an evidentiary hearing regarding Petitioner's claim that his retained counsel in the underlying criminal proceedings was ineffective because he failed to inform Petitioner of his sentencing exposure when Petitioner was considering whether to plead guilty or go to trial. This is the only claim in the § 2255 motion. For the reasons set forth below, the Court finds that Petitioner's § 2255 motion [Doc. 218] is without merit and it will be **DENIED**.

**I. BACKGROUND**

The underlying criminal proceeding against Petitioner involved fraudulent obtainment of financing and fraudulent sales of real estate associated with a development called "The Preserve" [Doc. 207 p. 2–3]. After a nine-day trial, a jury found Petitioner and his co-defendant guilty of conspiring to commit wire fraud and money laundering, as well as several counts of wire fraud and money laundering [Docs. 1, 84]. Specifically, the jury found that Petitioner defrauded financial institutions by providing down payments and monthly mortgages for buyers without informing the financial institutions that he and others were doing so [Docs. 1, 84]. The Court,

however, granted Petitioner's motion for judgment of acquittal as to one of the wire fraud counts [Doc. 114 p. 1–2].

After a six-day sentencing hearing, the Court sentenced Petitioner to a term of 126 months' imprisonment, followed by five years of supervised release [Docs. 182, 190], which was a below-guidelines sentence. In sentencing Petitioner, the Court considered Petitioner's relevant conduct, including an amount of loss of $13,747,770.16 [Doc. 207 p. 8–10], and imposed a sentencing enhancement for obstruction of justice [Doc. 203 p. 148–153].

The Sixth Circuit affirmed Petitioner's convictions and sentence on direct appeal. *United States v. Dobson*, 626 F. App'x 117 (6th Cir. 2015).

## II.    ARGUMENTS

### A.  Motion and Response

In his only claim under § 2255, Petitioner alleges that counsel failed to inform Petitioner of his sentencing exposure when Petitioner was considering whether to plead guilty or go to trial [Doc. 218 p. 3–12].

Specifically, in his § 2255 motion and supporting affidavit,[1] Petitioner alleges that the attorney he retained to represent him in the underlying criminal proceedings, Chris Townley, never advised him prior to trial as to the potential term of imprisonment Petitioner would face if he went to trial and lost [Doc. 218 p. 5; Doc. 218-1 ¶¶ 3–6]. In support thereof, Petitioner asserts that, after he was indicted, his attorney told him that the government would agree to a one-year sentence if Petitioner agreed to cooperate with the government, plead guilty, and testify against others involved in the business at issue [Doc. 218 p. 5; Doc. 218-1 ¶¶ 3–6]. Petitioner states, however,

---

[1] Petitioner's first § 2255 and supporting affidavit [Docs. 216 and 216-1] were terminated and refiled [Docs. 218 and 218-1]. These filings appear to be identical.

that, based on the advice of his attorney, he was not interested in such a plea offer and therefore told his attorney that he would go to trial [Doc. 218 p. 5; Doc. 218-1 ¶ 4].

Petitioner also claims that, prior to his trial, his wife discovered a statistic about going to trial in federal court that alarmed her, at which time Petitioner called his attorney to talk about what would happen if he pled guilty and Petitioner's attorney told him that he would talk to the prosecutor [Doc. 218-1 ¶ 6]. Petitioner's attorney then relayed a plea offer from the government under which Petitioner could plead guilty and use only the amount of the down payments from the transactions in the calculation of loss, for which Petitioner's counsel stated Petitioner would face two to four years imprisonment [*Id.*]. Petitioner turned down this offer without knowing his potential sentencing exposure, however, because he and his counsel both agreed that they did not think that he had done anything wrong [*Id.*; Doc. 218 p. 6].

Petitioner further states that, after the guilty verdict against him, counsel told Petitioner and his wife that he would have to research the time that Petitioner would face [Doc. 218-1 ¶ 7]. Based on that research, counsel told Petitioner that he thought that Petitioner would face two to five years [Doc. 218-1 ¶ 8]. Petitioner additionally alleges that his counsel did not explain the applicable sentencing factors and/or relevant conduct that could affect his potential sentence until after Petitioner and counsel met with the probation officer at a pre-sentence report interview [Doc. 218 p. 6–7; Doc. 218-1 ¶¶ 8–11].

Accordingly, Petitioner asserts that, before and during trial, he did not know that he could face imprisonment for more than ten years if he was found guilty [Doc. 218 p. 7; Doc. 218-1 ¶ 12]. Petitioner also claims that, if his attorney had advised him that he could face such a time of imprisonment after trial, he would have accepted the plea offer of two to four years in prison as relayed to him by trial counsel [Doc. 218 p. 7; Doc. 218-1 ¶ 13].

3

In its response to the § 2255 motion, Respondent first states that counsel for Respondent does not believe that any formal plea offer was ever conveyed to Petitioner or his counsel [Doc. 220 p. 8]. In support thereof, Respondent relies upon an affidavit from Petitioner's counsel in which counsel testifies that he and Petitioner informally discussed the possibility of Petitioner pleading guilty, but that Petitioner always insisted that he would not plead guilty if, in doing so, he would receive jail time [Doc. 220-1 ¶ 3].

Respondent also points out that Petitioner faults counsel for not fully presenting Petitioner with the information necessary for him to make an informed decision regarding a proposed plea agreement[2] while also representing that he did not wish to plead guilty [Doc. 220 p. 8–9]. Specifically, Respondent notes that, in his affidavit, Petitioner states that he turned down the first alleged plea offer because he was not interested in pleading guilty, serving time in prison, and testifying against business associates that Petitioner did not believe had done anything wrong [Doc. 220 p. 8; Doc. 218-1 ¶¶ 3–4]. Respondent further notes that Petitioner states in his affidavit that although he and his wife found a statistic stating that over ninety-eight percent of people indicted in the federal system are found guilty if they go to trial, Petitioner still decided that he would not plead guilty because he had done nothing wrong [Doc. 220 p. 8–9; Doc. 218-1 ¶ 6].

Moreover, Respondent argues that, in making the assertion that he would have pled guilty if counsel had informed him of his sentencing exposure, Petitioner ignores the fact that the United States never offered a plea agreement that would have capped Petitioner's sentencing exposure or guaranteed a lesser sentence [*Id.*]. Respondent also relies on *Weatherford v. Bursey*, 429 U.S. 454,

---

[2] Respondent says Petitioner asserts that, had counsel told him he would be facing a sentence of ten years or more, Petitioner would have directed counsel to negotiate a plea agreement with a lesser sentence [Doc. 220 p. 8–9]. Petitioner, however, does not assert that he would have directed counsel to negotiate a lesser sentence, but rather that he would have accepted the two to four year plea agreement offered [Doc. 218-1 ¶¶ 13–14].

4

561 (1977) for the proposition that criminal defendants have "no constitutional right to plea bargain" and further asserts that the United States is not required to acquiesce to a defendant's demands, including a request for a probationary sentence [*Id.*]. Further, Respondent notes that the Court has a practice of not accepting plea agreements that limit the Court's discretion with regard to the specific sentence, as the Court prefers to impose a sentence of the Court's choosing [*Id.*]. Thus, Respondent argues that counsel's inability and/or choice not to attempt to negotiate a plea agreement that capped Petitioner's sentence was not deficient [*Id.*].

Respondent further argues that Petitioner cannot establish that he rejected a plea agreement because of the advice of counsel and that, but for counsel's advice, he would have pleaded guilty; if Petitioner had pleaded guilty to any count in the indictment, the government would have sought a sentence based upon all of Defendant's conduct, including the conspiracy and the relevant conduct [*Id.* at 9–10].

Rather, according to Respondent, Petitioner asserts that counsel conveyed a plea offer and/or discussed the prospect of pleading guilty, but Petitioner rejected a guilty plea because Petitioner believed he had not done anything wrong [*Id.* at 10]. In support thereof, Respondent cites the fact that Petitioner repeatedly attempted to convince the jury that he was not involved in any fraudulent activity and the fact that the Court found that Petitioner had lied under oath and therefore assessed him with an additional two-point enhancement for obstruction of justice [*Id.*; Doc. 203 p. 148–53].

Respondent finally argues that it is unclear whether Petitioner could have pleaded guilty, as doing so would have required Petitioner to admit that he knowingly and intentionally committed fraud [Doc. 220 p. 10]. Specifically, Respondent notes that Petitioner denied any fraudulent

5

activity at trial, raised a lack of intent issue on appeal, and has not admitted guilt in his § 2255 motion [*Id.*].

### B. Evidentiary Hearing

The Court opened the evidentiary hearing in this matter by stating that it would not have accepted a plea agreement that bound the Court as to Petitioner's sentence, that the decision as to the amount of loss at issue was solely for the Court, and that Petitioner's counsel's defense in the underlying criminal matter was one of the best that the Court had seen in a white collar criminal case.

Petitioner also testified at the evidentiary hearing. On direct examination, Petitioner admitted that, at his arraignment, United States Magistrate Judge Lee told him his specific sentencing exposure for each count of the indictment. Petitioner further reiterated his argument that he had discussed a plea agreement with counsel two weeks before trial under which he would receive two to four years based on a loss calculation using three cabin gift deals and two tract option deals. Petitioner additionally stated that counsel had not explained the sentencing guidelines, his sentencing exposure, or the importance of relevant conduct prior to trial, and that, even after trial, counsel had thought relevant conduct only applied to drug cases. Petitioner ultimately stated that, if he had known his sentencing exposure, he would have pleaded guilty instead of going to trial.

On cross-examination, Petitioner admitted that while he now believes that he is guilty, he did not think so prior to trial, and that he had raised the issue of intent in his appeal of his conviction. Petitioner also admitted that, to have pleaded guilty in this case, he would have had to admit that he defrauded someone, which he did not believe at the time.

Also, in response to the Court's questions, Petitioner again admitted that Judge Lee was clear at his arraignment with regard to the maximum punishment as to each count of the indictment and that no one told him anything had changed between arraignment and trial, but stated that he did not understand everything. Further, during the Court's questioning, the Court noted that Petitioner's sentencing exposure was based on both loss amount and the base offense, and that the Court does not and cannot make findings regarding many relevant factors, including but not limited to loss amount, acceptance of responsibility, and obstruction of justice, until after trial.

Petitioner's criminal trial counsel also testified at the evidentiary hearing. On direct examination, counsel testified that he had tried to talk to Petitioner about cooperating with the government investigation a year before the arraignment and had also talked to Petitioner about a possible plea agreement in the weeks before trial. Petitioner, however, consistently stated that he would not plead guilty unless he received only probation, even though counsel warned him that he could have much more sentencing exposure at trial. Counsel specifically testified that Petitioner's refusal to consider any plea agreement with jail time meant that the government never offered Petitioner a plea agreement.

Counsel also stated that he talked with Petitioner about sentencing guidelines before Petitioner was indicted, but had no such discussions with Petitioner after the indictment, and that determining the loss calculation for the charges was going to be very difficult. Counsel admitted that he did not discuss relevant conduct with Petitioner before trial and did not tell Petitioner his guidelines range because Petitioner knew the statutory maximum penalty, and that he spoke with Petitioner about relevant conduct after the trial in terms of drug exposure. Counsel stated that his goal for a potential plea agreement for Petitioner was five years, but admitted that the Court could

have rejected such a plea, especially as the conspiracy charge alone had a five-year maximum penalty and other charges against Petitioner had a twenty-five year maximum.

During the Court's questioning of Petitioner's counsel, the Court noted that it would not have accepted a guilty plea with a cap and that it would have rejected a plea agreement based solely on the conspiracy charge because of Petitioner's guidelines range and the possible additional charges. Counsel also testified that while a white-collar defense attorney can state the statutory maximum for a defendant, the loss calculation is much more complicated in such cases, especially those involving real estate transactions. Further, the poor drafting of the indictment complicated the loss calculation in this case, as people who were not victims suffered some of the relevant losses. Counsel also testified that the six-day sentencing hearing in the criminal matter included information that was not available before trial, and that there was therefore no way to predict the amount of loss or what the Court would consider loss and/or relevant conduct.

### III. APPLICABLE LAW

The Sixth Amendment provides, in pertinent part: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction

> . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

In *Smith v. United States*, the Sixth Circuit held that an "attorney has a clear obligation to fully inform [his or] her client of the available options." *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). In accordance with this duty, a criminal defendant "has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Id.* at 553. Further, "the failure of defense counsel to 'provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance.'" *Id.* (quoting *Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003)).[3]

---

[3] Thus, the Sixth Circuit has held that, where there is a question of whether counsel properly counseled a defendant regarding a plea offer in a § 2255 motion, the court should hold an evidentiary hearing to develop a record on these factual issues. *Id.* at 554. In accordance with this holding, the Court granted Petitioner's motion for an evidentiary hearing.

Moreover, while a court should consider a defendant's protestations of innocence during trial in determining an ineffective assistance of counsel claim based on rejection of a plea deal, those protestations are not dispositive, as a criminal defendant may enter a plea deal while maintaining his innocence. *Id.* at 551–52 (citing *North Carolina v. Alford*, 400 U.S. 25, 33 (1970)).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In the context of ineffective advice resulting in rejection of a guilty plea, the Supreme Court has held as follows:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). Where there is a substantial disparity between the penalty offered in the plea agreement and the punishment resulting from the indictment, a petitioner is entitled to a presumption of prejudice from his counsel's failure to properly advise and inform him that he could face a substantially longer prison sentence. *Sawaf v. United States*, 570 F. App'x 544, 547–48 (6th Cir. 2014) (citations omitted).

The Supreme Court has emphasized a claimant must establish both prongs of a claim for ineffective assistance of counsel in order to meet his burden, and if either prong is not satisfied the claim must be rejected. *Strickland*, 466 U.S. at 69.

## IV. ANALYSIS

Petitioner has failed to establish that he is entitled to relief under § 2255 for his claim of ineffective assistance of counsel.

First, counsel's failure to provide Petitioner with calculations of his sentencing guidelines range in this case prior to trial was reasonable, as no attorney could have accurately predicted the Court's loss calculation in this case due to the specific complications of the poorly-drafted indictment and the difficulty of calculating the losses specifically at issue in this case.

Further, the undisputed evidence establishes that, at his arraignment, Judge Lee informed Petitioner of his maximum sentencing exposure for each of the charges against him. Thus, Petitioner had at least constructive knowledge of such exposure at all relevant times in this matter. It is also undisputed that, despite this knowledge, Petitioner refused to consider any plea agreement offer that included jail time because, prior to his trial, Petitioner did not believe that he had done anything wrong. Further, the record establishes that Petitioner would have had to admit that he had defrauded someone in order for the Court to accept a guilty plea from Petitioner and that the Court would not have accepted any plea agreement that capped Petitioner's sentencing exposure in this case.

Accordingly, taken together, the circumstances of this case establish that Petitioner's counsel acted reasonably in his representation of Petitioner and that counsel's assistance did not prejudice Petitioner.

## V. CONCLUSION

For the reasons set forth above, Petitioner is not entitled to relief under § 2255 and his motion [Doc. 218] will be **DENIED**. Thus, under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability ("COA") should be granted. A COA should issue

if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of a COA, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). After reviewing Petitioner's claim, the Court finds that reasonable jurists could not conclude that it deserves further review, as Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a COA will not issue.

**An order shall enter.**

                                        **/s/**
                                        **CURTIS L. COLLIER**
                                        **UNITED STATES DISTRICT JUDGE**